

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00294-CV

**IN THE INTEREST OF M.A.T.T.**, a Child

From the 37th Judicial District Court, Bexar County, Texas
Trial Court No. 2024PA00066
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:        Irene Rios, Justice
                Lori Massey Brissette, Justice
                H. Todd McCray, Justice

Delivered and Filed: December 10, 2025

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

This case involves a final order that terminates Father's[1] parental rights, names the Department as the child's sole managing conservator, and names Mother and Foster Mother as possessory conservators. Foster Mother and the child, through her attorney and guardian ad litem, assert that Mother's rights should have been terminated or, in the alternative, that Foster Mother should have been named the child's managing conservator. Father asserts that termination of his

---

[1] To protect the identity of minor children in an appeal from an order terminating parental rights, we refer to the child's mother as "Mother," to the child's father as "Father," and to the child using her initials or as "the child." *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2). In this case, as the foster mother intervened seeking conservatorship and is an appellant in this matter, we refer to her as Foster Mother.

parental rights is not in the best interest of the child. While we affirm the trial court's rulings as to termination with regard to both parents' parental rights, we hold the trial court abused its discretion in naming the Department as the sole managing conservator of the child and remand for further proceedings in light of our decision.

**Procedural Background**

On January 16, 2024, Mother was arrested on an active warrant for violation of community supervision, based on a prior conviction for possession of a controlled substance. The Department, after locating the child, filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship.[2]

The Department was named temporary managing conservator of the child, and the child was placed in the home of Foster Mother, where she remains today. A family service plan was created for both parents and made an order of the court. Later, the child's Foster Mother intervened asserting that parental rights should be terminated as to both parents and seeking to adopt or, in the alternative, for conservatorship of the child.

The final trial was originally set in December of 2024. However, it was reset to January of 2025 because Mother had just been released from incarceration a few days prior to the December trial date. At the January trial setting, the Department again sought additional time for Mother to complete services, and the trial was reset, over objection, for February of 2025. At the same time, the trial court entered an Order Retaining Suit on Court's Docket and Setting Court Proceeding Dates.[3] In that Order, the trial court found that Mother had made a good faith effort to successfully complete the service plan, including a court ordered substance abuse treatment program, but

---

[2] The Department did not elaborate at trial as to where the child was when Mother was arrested, when the petition was filed, or how the child came into the Department's care.

[3] This Order was rendered on January 16, 2025 but was not signed until March 25, 2025, after the trial of the matter had concluded but before the final order was rendered.

needed additional time. The Order also stated that "on completion of the services plan the Court intends to order the child returned to the parent."

At the February trial setting, Mother again asked for more time to complete her services so that she could maintain her parental rights. But the Department opposed continuance and changed its position to recommend termination of both parents' rights. Father sought only possessory conservatorship. Foster Mother, as stated above, sought to adopt or, in the alternative, to be named as the child's managing conservator. The child, through her attorney and guardian ad litem, requested that parental rights be terminated and to remain with Foster Mother.

After the nonjury trial concluded in February of 2025, the matter was taken under advisement, and on April 18, 2025, the Associate Judge signed her report setting forth her findings of fact and conclusions of law as to all issues before her. Specifically, the trial court found the Department made reasonable attempts to reunite the child with her parents. The trial court found there was clear and convincing evidence sufficient to support termination of Father's rights under Texas Family Code section 161.001(b)(1)(O) and (P), and that such termination is in the best interest of the child. But, rather than terminate Mother's parental rights, the trial court found that the Department should be named sole managing conservator of the child and that Mother and Foster Mother should be named possessory conservators. The trial court ordered the child to remain in Foster Mother's home but provided that Mother could continue visits. Further, the trial court found that Mother should pay $100 per month in child support and follow a post-trial service plan.

On June 20, 2025, a Final Order was rendered, signed by the Associate Judge, setting forth the same rulings as those set forth in the report dated April 18, 2025. Father, Foster Mother, and the child, through her attorney and guardian ad litem, all filed timely notices of appeal.

**Facts**

Mother was incarcerated from the time the child was placed in the Department's care, because of Mother's arrest, until she was released from incarceration on December 6, 2024. The child was around eight months old when the arrest occurred and at the time of trial was almost two years old. Mother acknowledged a long history of drug use and a criminal record as well as a history with the Department, with three prior referrals being ruled out and one resulting in a "reason to believe" for neglectful supervision of another child.[4] Father, too, has a long history of drug use and criminal activity. Thus, the Department testified of concerns regarding the parents' drug use, domestic violence, and Mother's mental health.

### Mother

While incarcerated, a family service plan was created and made an order of the court. Pursuant to that plan, Mother was required to complete a parenting class and a domestic violence class, complete a psychological evaluation and follow all recommendations, complete a substance abuse assessment and follow all recommendations, and find stable employment and housing. Mother completed the parenting class and provided a certificate of completion to the Department. While Mother claims she completed a domestic violence class while incarcerated,[5] she did not provide proof of same to the Department. Mother testified she had separated from Father and was two sessions shy of completing counseling at the Battered Women's Shelter in San Antonio when she was arrested.

---

[4] That child currently resides with her paternal grandparents and Mother does not have custody.

[5] The Department caseworker testified there was a concern about domestic violence between Mother and Father but the parents were not involved with each other at the time of removal and remain separated today.

Since her release in December of 2024, Mother has resided at Austin Transitional Center, a halfway house. In December, she requested her social security card and birth certificate, both of which are required to obtain a valid identification card and employment, and she has researched housing options in San Antonio. But, as of the trial date, two months post release, she had not found a job or permanent residence. The case manager at the halfway house confirmed her efforts to obtain identification and testified that it sometimes takes months for a person to get their social security card and gain employment after release from incarceration. The case manager also confirmed Mother's attempts to find housing and that there are available "mommy and me" rooms at Oxford House in San Antonio.

Mother testified that, during her incarceration, she participated in an anger management class, a class on Addiction and Families, a 12-step class, counseling sessions, and a program called Changes, which focused on improving her thinking patterns, decision making, and relationships. She also attends Alcoholics Anonymous and Cocaine Anonymous three times a week at the halfway house where she resides. As part of the requirements of residing at the halfway house and of being on parole, Mother is subject to random drug testing and has been clean since her release. She also participates in a program called ANEW, which her case manager at the halfway house testified is a parole program focused on mental health. Further, Mother provided proof of sign-in sheets documenting her attendance at weekly support groups. She has not, though, completed her court-ordered substance abuse assessment or provided proof of a psychological evaluation. Her case manager confirmed she is compliant with all programs at the halfway house, many of which address the same issues as the family service plan.

Although Mother was released on December 6, 2024, she did not contact the Department until the end of December, and she participated in only two visits with the child before trial

commenced. Both Mother and the Department caseworker testified that it took a while for Mother to obtain a phone to facilitate virtual visits.

**Father**

Father was incarcerated due to a charge of possession of a controlled substance and was not aware of the child's existence until he was released from jail in April of 2023. And, like Mother, Father also acknowledged his long history of drug use and criminal activity. A service plan was created and made an order of the court which required him to complete parenting classes, complete a psychological evaluation and follow all recommendations, complete a substance abuse assessment and follow all recommendations, submit to random drug testing, and demonstrate the ability to maintain stable employment and safe housing for the child.

Father completed the psychological evaluation and substance abuse assessment, as well as parenting classes. But, he did not complete a domestic violence class or the court-ordered substance abuse treatment program. He testified that he had a hard time following the online class and asked to be treated in an inpatient program but was told he did not qualify. The Department disputed that Father requested additional treatment, with the caseworker testifying that Father chose not to attend either inpatient or outpatient treatment. Father testified that he is homeless, unstable, and if the child were returned to him he would not have a place to keep and care for her. The Department testified that Father failed to comply with numerous requests for drug tests and that he admitted on several occasions that he continues to use illegal drugs. Father admitted to continued usage at trial. Finally, Father was arrested in August of 2024, during the pendency of this termination proceeding, for possession of a controlled substance.

Even so, Father demonstrated his desire to parent, engaging with the child in weekly visits, missing only a couple throughout the entire year. According to the Department, the visits were

appropriate and a bond developed between Father and the child. Father, however, has no home, no job, and no social support system to assist him in caring for the child and getting and staying clean.

**Maternal Grandmother**

The child's maternal grandmother has been involved with the case from the beginning and has attended hearings throughout. Originally, she was living in Ohio when she reported Mother's arrest to the Department because she did not know the whereabouts of the child. Based on the grandmother's desire to take the child, the Department, early on, performed a background check and a home study on the home of the maternal grandmother, both of which came back approved. But the child was not placed with her. The trial court heard evidence that Mother voiced concerns to the Department about doing so. Mother stated she asked the Department to place the child with her mother. But Foster Mother testified, without objection, that she was told otherwise.

In the early fall of 2024, the child's maternal grandmother moved from Ohio to San Antonio and, soon after, met with the caseworker to discuss taking the child. But, a new home study was not requested until December 2024 when the second caseworker took over the handling of the file. Grandmother admitted the Department had some concerns with the second home study, specifically that she owned a firearm and the home was not childproofed. Grandmother testified that she had addressed both issues. A dispute arose as to whether the grandmother refused background checks on persons living in her home, to which grandmother responded by testifying that she has lived alone for years.

Because maternal grandmother lived in Ohio until September 2024, she first met the child four weeks before trial in a supervised visit and has had only four 15-minute visits. She testified she was not allowed to see the child before then. She admitted her relationship with her daughter has been tumultuous but testified they are in regular contact now. She testified of her desire to

ensure the child is with family and that the child has an opportunity to know her older sister, who also lives in San Antonio with her own grandparents. In fact, she said she would be willing to adopt the child if parental rights were terminated.

### Foster Mother

The child has been placed in intervenor Foster Mother's home since the beginning of the case and remains there. Foster Mother is a nurse practitioner and, with steady employment, is financially secure. The caseworker testified there have been no concerns with that placement. In fact, observations of the child with Foster Mother show a strong bond and a loving home. Foster Mother testified that her bond with the child is indistinguishable from that of a biological mother and that the child refers to her as "mama."

Foster Mother testified that the child was small for her age but appeared to be in good health apart from recurrent ear infections. Foster Mother was able to ensure the child received the appropriate care, including surgical ear tubes.

Foster Mother's sister is also an approved caretaker through 1Hope for Kids, the foster care agency through which Foster Mother is licensed. To engage with the child, Foster Mother's sister also went through background checks, CPR training, and completed required courses. Foster Mother testified that her extended family, as well, is available to support her.

## Final Order Naming Department as Sole Managing Conservator, with Mother and Foster Mother as Possessory Conservators

While the trial court clearly entered a final order in this case, it also—at the same time— ordered the Department to create a post-trial service plan, ordered Mother to comply with same,

and set a permanency hearing to review Mother's compliance.[6] The trial court also stated, "The Department . . . may reserve the right to use any removal evidence or evidence from this trial, if properly presented, at a modification trial." Foster Mother and the child contend that, by doing so, the trial court was attempting to provide Mother additional time to comply with her service plan, with the ultimate goal of reunification in the event Mother was able to do so and with the intent to reconsider termination, on the same evidence, if she was not. They urge that the trial court, in essence, intended to circumvent the deadline imposed by Texas Family Code section 263.401. They further contend the trial court erred by not terminating Mother's parental rights and by naming the Department, not Foster Mother, as the child's managing conservator.

**The Trial Court's Authority Under Chapter 263**

Under Texas Family Code section 263.401, a trial court can provide to a parent additional time to comply with a service plan, but that section by its very terms only applies to *pretrial* extensions of jurisdictional authority. Section 263.401(a) provides that a case is automatically dismissed if the trial is not commenced within one year from the date the Department was named temporary managing conservator, unless the court has granted an extension under section 263.401(b). TEX. FAM. CODE §263.401(a). An extension can be granted under section 263.401(b) if the court finds that "extraordinary circumstances necessitate the child remaining in the *temporary* managing conservatorship of the department and that continuing the appointment of the department as *temporary* managing conservator is in the best interest of the child." TEX. FAM. CODE § 263.401(b) (emphasis added). Thus, while section 236.401 provides for the opportunity to extend the dismissal date of the matter, and continue the Department's role as temporary managing

---

[6] Specifically, the trial court ordered Mother continued visits with the child twice per week virtually transitioning to biweekly in person, ordered her to continue drug testing, and ordered that Mother's service plan was to be revised to include a parenting program, psychological evaluation and treatment, and a requirement that she be able to demonstrate "stability."

conservator, it does not contemplate continued jurisdiction over the Department's petition requesting termination of Mother's rights after the entry of a final order. TEX. FAM. CODE § 263.401. It is axiomatic that issues resolved by final order are just that—resolved.

Likewise, the court's actions do not comport with Texas Family Code section 236.403 which would have allowed the court to order an extension of time for a monitored transitional return of the child to Mother. That section also expressly allows for the entry of a temporary order that provides a parent additional time to complete a service plan where the court has ordered either the return or a scheduled transition of the child back to the parent. TEX. FAM. CODE § 263.403. But, as stated above, here the trial court entered a final order, not a temporary one. And, there is no indication that the trial court was ordering a monitored return of the child. Instead, it is clear from the record that the trial court, despite entering a final order, was seeking to determine later whether the child should be returned or Mother's rights terminated.

Thus, the only statute that could apply here is Texas Family Code section 263.404, entitled "Final Order Appointing Department as Managing Conservator Without Terminating Parental Rights." This statute allows for the trial court to "render a final order appointing the Department as managing conservator of the child without terminating the rights of the parent of the child if the court finds that: (1) appointment of a parent as managing conservator would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development; and (2) it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator." TEX. FAM. CODE § 263.404. Here, the trial court found that it was in the best interest of the child for the Department to be named as the sole managing conservator. And, as required by Section 263.404, the trial court made the following finding:

The Court finds that the appointment of a parent or both parents as managing conservator would not be in the best interest of the child [M.A.T.T.] because the appointment would significantly impair the child's physical health or emotional development; and it would not be in the best interest of the child to appoint a relative of the child or another person as managing conservator.

Regardless of the trial court's intent,[7] by entering a final order that terminates only Father's parental rights and names the Department the child's sole managing conservator with Mother and Foster Mother as possessory conservators, the trial court rejected the Department's request to terminate Mother's parental rights.

Because it had the authority to enter such an order under Texas Family Code section 263.404, and because the trial court made the requisite findings, we are left with evidentiary challenges brought by Foster Mother and the child as to the trial court's actions. Specifically, they challenge the evidentiary support for the trial court's refusal to terminate Mother's rights, making her a possessory conservator, and the trial court's finding that it would not be in the best interest to name Foster Mother as the child's managing conservator.

**Trial Court's Termination of Father's Rights**

While the trial court chose not to terminate Mother's rights, it did terminate the rights of Father. Father challenges that order, asserting that, while there may be evidence in the record supporting termination under Texas Family Code subsection 161.001(b)(1), the record does not support a determination that termination of his rights is in the best interest of the child under subsection 161.001(b)(2).

---

[7] There is no doubt the trial court can later terminate Mother's rights on the same evidence as that presented in the original trial in this matter. *See* TEX. FAM. CODE §161.004(b). But, it may do so only on the subsequent filing of a new petition to terminate, not by continuing jurisdiction of the original matter. *See* TEX. FAM. CODE 161.004(a)(1); *In re K.G.,* 350 S.W.3d 338, 353 (Tex. App.—Fort Worth 2011, pet. denied).

**Standard of Review**

"A parent's rights to the 'companionship, care, custody, and management' of his or her children are constitutional interests 'far more precious than any property right.'" *M.P. v. Texas Dept. of Family & Protective Servs.*, No. 03-22-00163-CV, 2022 WL 4281617, *6 (Tex. App.—Austin Sep. 16, 2022, pet. denied) (quoting *Santosky v. Kramer,* 455 U.S. 745, 758–59 (1982)); *see In re M.S.,* 115 S.W.3d 534, 547 (Tex. 2003). An order terminating a parent's rights to their child is irrevocable and harsh. In fact, it has been called the "death penalty" of custody matters. *In re K.M.L.*, 443 S.W.3d 101, 121 (Tex. 2014) (J. Lehrmann, concurring). Because of the constitutional import of the rights in question, any petitioner seeking to terminate a parent's rights to their child must prove the basis for same by a meeting a heightened burden of proof—that being clear and convincing evidence. *In re J.F.C.*, 96 S.W.3d 256, 263–64 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007.

Here, because Father only challenges the best interest finding, we review the record to determine whether *any* reasonable factfinder could form a firm belief or conviction that termination was in the best interest of the child. *J.F.C.*, 96 S.W.3d at 266; TEX. FAM. CODE § 101.007. In doing so, we apply well-established standards of review. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (conducting a factual sufficiency review); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (conducting a legal sufficiency review). In a legal sufficiency review, we look at all the evidence in the light most favorable to the finding and assume the factfinder resolved all disputed facts in favor of its finding, disregarding all evidence a reasonable factfinder could have disbelieved. *J.F.C.*, 96 S.W.3d at 266. Further, in a bench trial, the trial court

is the sole judge of the credibility of witnesses and the weight to be given their testimony. *See In re J.F.-G.*, 627 S.W.3d 304, 312, 317 (Tex. 2021). This is because "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re O.L.W.*, No. 04-24-00208-CV, 2024 WL 3588395, at *2 (Tex. App.—San Antonio July 31, 2024, pet. denied) (quoting *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). We, therefore, defer to the trial court's factual determinations. *J.F.-G.*, 627 S.W.3d at 312; *see also In re R.R.A.*, 687 S.W.3d 269, 279 n.50 (Tex. 2024) ("Reviewing courts, however, must defer to the factfinder's judgment as to the credibility of the witnesses and the weight to give their testimony, including reasonable and logical inferences from the evidence.").

**Analysis of Best Interest**

In determining whether the evidence supports a best interest determination, we review the *Holley* factors as well as the factors set out in Texas Family Code section 263.307(b). *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *C.H.*, 89 S.W.3d at 27. "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we must focus on the best interest of the child, not the best interest of the parent. *See in re J.P.H.*, No. 04-23-00131-CV, 2023 WL 5280376, at *3 (Tex. App.—San Antonio Aug. 16, 2023, pet. denied) (citing *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ)).

Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 28 (holding

the same evidence may be probative of both section 161.001(b)(1) grounds and best interest, but such evidence does not relieve the State of its burden to prove best interest). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *See In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

Here, the evidence presented to the trial court raised the following concerns: (a) Father failed to take any action to provide a more stable or safe home for the child or to obtain employment; and (b) while Father demonstrated a desire to remain in the child's life, making some headway on the service plan and maintaining regular visits with the child, he admitted he remained unstable and continued to use illegal drugs. Ultimately, the Department sought termination, and it was granted by the trial court, under Texas Family Code subsections 161.001(b)(1)(O) and (P).

### 1. Desires of the Child

The Department elicited no testimony regarding the child's desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (quoting *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied)). Here, the child has bonded with Father during short weekly visits but has also bonded with Foster Mother, as any young child would do with their primary caretaker. *See In re I.D.G.*, 579 S.W.3d 842, 853–54 (Tex. App.—El Paso 2019, pet. denied) ("Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor.").

**2. Emotional and Physical Needs, Age and Physical and Mental Vulnerabilities**

The child in this case has no special needs.

**3. Emotional and Physical Dangers, History of Physical Abuse or Substance Abuse, and Magnitude of Harm**

Father admitted at trial that he continues to use illegal substances and is unstable in that he has no home or employment. Further, while he has made great strides to check the boxes of items on the family service plan, he did not complete the domestic violence class—which was of particular concern given the domestic violence allegations relating to his relationship with Mother. He also did not complete either inpatient or outpatient drug treatment, as recommended. *See In re O.N.H.*, 401 S.W.3d 681, 687 (Tex. App.—San Antonio 2013, no pet.) ("Non-compliance with a service plan is probative of a child's best interest.").

**4. Parental Abilities**

Father demonstrates the desire to parent, through his efforts in short, weekly visits. And, he has taken steps to complete aspects of the family service plan. But, in the end, his continued use of illegal drugs and his inability to maintain employment or obtain housing impacts his ability to put his child's needs above his own and precludes him from demonstrating an ability to truly parent.

**5. Programs Available and Social Support System**

The evidence demonstrated that Father has little to no social support or family support.

**6. Plans for the Child**

Father testified he had no ability to provide stability for the child in the event of a return.

**7. Stability of the Home**

Father testified he has no stable housing and no plans to obtain same.

**8. Acts or Omissions and Excuses**

The record is clear, from Father's own testimony, that he has failed to address his substance abuse, continues to use actively, and has been unable to obtain housing or employment.

**9. Frequency and Nature of Out-of-Home Placement**

The child has been placed with Foster Mother since she came into the Department's care. This placement has been appropriate, stable, and loving, as discussed below.

**10. Results of Psychiatric, Psychological, or Developmental Evaluations**

The record does not demonstrate a concern with regard to Father's mental health. And, in fact, he did complete a psychological evaluation as requested.

**11. Willingness and Ability to Complete Counseling and Cooperate with the Department**

Father demonstrated a desire to cooperate with the Department and a desire to complete services. But even he admitted he was simply unable to do the things necessary to establish his ability to parent this child in a safe, stable home unencumbered by his continued use of illegal drugs.

**Conclusion of Best Interest Analysis**

Having reviewed the record and considered all the evidence under the appropriate standard of review and given that these factors weigh in favor of termination, we conclude the trial court could have reasonably formed a firm belief or conviction that termination of Father's parental rights was in the child's best interests. *See* TEX. FAM. CODE § 161.001(b)(2); *H.R.M.*, 209 S.W.3d at 108; *J.P.B.*, 180 S.W.3d at 573. Accordingly, we affirm the trial court's order of termination of Father's rights.

**Trial Court's Decision Not to Terminate Mother's Rights**

  **Standard of Review and Applicable Law**

  It is rare to review on appeal a trial court's refusal to terminate a parent's rights. But, when that occurs, the standard of review is clear. *M.P.*, 2022 WL 4281617, at \*6; *see also Burns v. Burns*, 434 S.W.3d 223, 226–27 (Tex. App.—Houston [1st Dist.] 2014, no pet.). When reviewing the legal sufficiency of evidence supporting the trial court's denial of termination, a matter on which the Foster Mother and/or the Department had the burden of proof by clear and convincing evidence, we will only reverse where the evidence establishes, as a matter of law, all vital facts supporting the grounds for termination. *See M.P.*, 2022 WL 4281617, at \*6; *City of Keller v. Wilson*, 168 S.W.3d 802, 827–28 (Tex. 2005). "Evidence is conclusive only if reasonable people could not differ in their conclusions." *City of Keller*, 168 S.W.3d at 816. Further, in determining how a reasonable person would view the evidence, we must consider whether a factfinder would be required to, as a matter of law, form "a firm belief or conviction" that termination *must* result. TEX. FAM. CODE § 101.007.

  While, to terminate Mother's rights, the Department and/or Foster Mother were required to prove a ground for termination under Texas Family Code section 161.001(b)(1) and prove termination is in the best interest of the child under section 161.001(b)(2), we need only address best interest, as it is dispositive. *See M.P.*, 2022 WL 4281617, at \*6 (citing *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003)). "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (citing TEX. FAM. CODE § 153.131(b)). "And because of the strong presumption in favor of maintaining the parent-child relationship and the due process implications of terminating a parent's rights to her minor child without clear and convincing evidence, 'the best interest standard does not permit termination

- 17 -

merely because a child might be better off living elsewhere.'" *In re D.L.W.W.*, 617 S.W.3d 64, 81 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quoting *In re J.G.S.*, 574 S.W.3d 101, 121–22 (Tex. App.—Houston [1st Dist.] 2019, pet. denied)). As this Court has recognized, in a suit to terminate a parent's rights, the burden is "not to simply prove [Mother] should not have custody of her child[]," but "to prove, by clear and convincing evidence, that it is not in the child[]'s best interest for [her] to have any legal relationship with her whatsoever." *In re K.N.J.*, 583 S.W.3d 813, 827 (Tex. App.—San Antonio 2019, no pet.) (citing *In re J.A.J.*, 243 S.W.3d 611, 614–17 (Tex. 2007) (distinguishing conservatorship from termination)).

Just as we did above, we look to the *Holley* factors when reviewing a trial court's best interest determination. *Holley*, 544 S.W.2d at 372; *see also In re A.C.*, 560 S.W.3d 624, 631 (Tex. 2018); *In re E.N.C.*, 384 S.W.3d 796, 807 (Tex. 2012). This list is not exclusive or exhaustive, and not every factor must be proved to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27.

### Analysis of Best Interest

#### 1. Desires of the Child

The Department elicited no testimony regarding the child's desires. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *J.M.G.*, 608 S.W.3d at 57 (quoting *S.J.R.-Z.*, 537 S.W.3d at 693). Here, the child has bonded with Foster Mother, as any young child would do with their primary caretaker. *See I.D.G.*, 579 S.W.3d at 853–54 (Tex. App.—El Paso 2019, pet. denied) ("Evidence that a child is well-cared for by the foster family, is bonded to the foster family, and has spent minimal time in the presence of a parent is relevant to the best interest determination under the desires of the child factor."). While Mother

had little opportunity to visit with the child during the proceeding, due to her incarceration, she had begun visits prior to trial.

### 2. Emotional and Physical Needs, Age and Physical and Mental Vulnerabilities

The child in this case has no special needs.

### 3. Emotional and Physical Dangers, History of Physical Abuse or Substance Abuse, and Magnitude of Harm

Mother's drug use is of concern, but she has been clean and seems to be in strict compliance with rules of parole and of the halfway house in which she resides with regard to the counseling and drug testing. Further, she is actively engaged in support groups and programs designed to change her decision making. While Mother cannot show proof that she completed a domestic violence class, the evidence demonstrates that she is no longer in the relationship with Father, which drove the concern about domestic violence.

### 4. Parental Abilities, Programs Available, and Social Support System

The record is void of any evidence of Mother's parenting abilities with regard to this child, as she has not had the opportunity given her arrest, incarceration, and the pending proceeding. As to her other child, while Mother does not have managing conservatorship of her child, her rights have not been terminated. The evidence did demonstrate that Mother is actively engaged in various programs and support groups to address her issues and to make the very real change necessary for her to parent this child.

### 5. Plans for the Child and Stability of the Home

Mother testified that she would like to move back to San Antonio and that there is a "Mommy and Me" room available at an organization that could support her getting back on her feet.

### 6. Acts or Omissions and Excuses

Mother has a long history of drug use but has been clean since her release from incarceration. While Mother has not satisfied all requirements of the family service plan, there is evidence that she attempted to address the issues raised in the service plan through other programs.

### 7. Frequency and Nature of Out-of-Home Placement

The child has been placed with Foster Mother since she came into the Department's care. This placement has been appropriate, stable, and loving, as discussed below.

### 8. Results of Psychiatric, Psychological, or Developmental Evaluations

Mother testified she has engaged in multiple psychological evaluations, yet none were produced. Even so, she testified and her caseworker at the halfway house confirmed that she is engaged in a program that seeks to address mental health. She also testified she had maintained her medication and had an appointment scheduled with a psychiatrist.

### 9. Willingness and Ability to Complete Counseling and Cooperate with the Department

Mother demonstrated a desire to cooperate and to engage in services focused on the issues raised by the Department.

### Conclusion of Best Interest Analysis

While there is evidence in the record that demonstrates Mother's failure to comply with some of the requirements of the service plan, as well as a history of drug use, we cannot hold that a factfinder viewing the record before us would be required, as a matter of law, to form a firm belief or conviction that termination of Mother's rights was in the child's best interest. *See* TEX. FAM. CODE § 101.007. We, likewise, cannot hold that the evidence supporting the trial court's decision not to terminate was so contrary to the overwhelming weight of the evidence as to be

clearly wrong or unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). For those reasons, we affirm the trial court's decision not to terminate the parental rights of Mother.

**Trial Court's Decision to Name the Department as Managing Conservator**

In the alternative, Foster Mother and the child, through her attorney and guardian ad litem, contend the trial court erred by naming the Department, and not Foster Mother, as the child's sole managing conservator. Conservatorship determinations are not subject to a heightened standard of review, as are termination decisions. Instead, we review a conservatorship determination only to determine whether the trial court abused its discretion, reversing only if the decision is made without reference to guiding rules or principles, that is, if the decision is arbitrary and unreasonable. *See J.A.J.*, 243 S.W.3d at 616; *In re M.M.M.*, 307 S.W.3d 846, 849 (Tex. App.—Fort Worth 2010, no pet.). "An abuse of discretion does not occur when the trial court bases its decisions on conflicting evidence," nor does an abuse of discretion occur so long as there is some evidence of substantive and probative character to support the trial court's decision. *M.M.M.*, 307 S.W.3d at 849 (citing *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding). But, while we keep in mind that the trial court is in a better position to decide conservatorship because "it faced the parties and their witnesses, observed their demeanor, and had the opportunity to evaluate the claims made by each parent," where there is no evidence supporting the trial court's decision, or where the trial court erred in its application of its discretion, we will reverse. *In re J.R.D.*, 169 S.W.3d 740, 743 (Tex. App.—Austin 2005, pet. denied); *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.).

The Family Code provides that a "court may render a final order appointing the department as managing conservator of the child without terminating the rights of the parent of the child" if it finds: "(1) appointment of a parent as managing conservator would not be in the best interest of

the child because the appointment would significantly impair the child's physical health or emotional development; ***and*** (2) it would not be in the best interest of the child to appoint a relative of the child or another person." *See* TEX. FAM. CODE § 263.404(a) (emphasis added).

The trial court's final order makes these findings in a single conclusory sentence. However, we do not find in our review of the record any evidence supporting the second finding that "it would not be in the best interest of the child to appoint a relative of the child or another person." *Id.* The parties presented no evidence depicting Foster Mother or the maternal grandmother as "incapable of adequately exercising conservatorship over the child[,] [n]or did they present evidence touching upon the impact, if any, that their appointment as [] managing conservator would have on the child's best interest." *In re N.A.O.*, No. 07-21-00247-CV, 2022 WL 518429, at *3 (Tex. App.—Amarillo Feb. 18, 2022, no pet.). As in *N.A.O.*, the parties at trial "were focused on the termination of parental rights" rather than "who would serve as the child's managing conservator if complete termination never occurred." *Id.* Because the trial court lacked the requisite evidence to support the second finding, the trial court's decision to appoint the Department as M.A.T.T.'s sole managing conservator "constituted an abuse of discretion." *Id.* We therefore reverse that decision and remand for the trial court to reconsider conservatorship of the child. *Id.* at *4 (reversing portion of judgment appointing Department managing conservator and remanding for further proceedings).

**Conclusion**

While we affirm the trial court's rulings terminating Father's parental rights and denying the termination of Mother's parental rights, we reverse and remand the trial court's conservatorship findings and remand for further proceedings in accordance with our decision.

Lori Massey Brissette, Justice